UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VALERIE MORRIS,<br><br>        Plaintiff,<br><br>vs.<br><br>PENNSYLVANIA MANUFACTURERS'<br>ASSOCIATION INSURANCE<br>COMPANY and GALLAGHER<br>BASSETT SERVICES, INC.,<br><br>        Defendants. | 4:24-cv-_4196____<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Valerie Morris, by and through her attorneys, and hereby states and alleges as follows:

## **PARTIES**

1.      Plaintiff Valerie Morris is and at all times relevant hereto was a resident of Rapid City, South Dakota.

2.      Defendant Pennsylvania Manufacturers' Association Insurance Company is an insurance company domiciled in Pennsylvania with its principal place of business in Pennsylvania.

3.      Defendant Gallagher Bassett Services, Inc. is a corporation domiciled in Delaware with its principal place of business in Illinois.

## **VENUE AND JURISDICTION**

4.      This Court has jurisdiction pursuant to 28 U.S. Code § 1332 as the Parties are diverse and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these causes of action occurred in this District.

## FACTUAL SUMMARY

6. At all times relevant to this Complaint, Plaintiff Valerie Morris ("Val") worked as a housekeeper at Edgewood Assisted Living in Rapid City, South Dakota.

7. Defendant Pennsylvania Manufacturers' Association Insurance Company ("Insurer") provided and administered workers' compensation insurance coverage for Edgewood Assisted Living, including Val's claim.

8. Insurer enlisted the services of Defendant Gallagher Bassett Services, Inc. ("Gallagher") to provide claim administration services, and Gallagher performed claim administration services for Val and other claimants.

9. Insurer and Gallagher had an arrangement where Gallagher would perform claim administration duties on a claim including, but not limited to, the duties of good faith and fair dealing, the duties of processing paperwork related to claims, investigating claims, obtaining medical records, monitoring treatment, retaining independent medical examination doctors, verifying coverage, adjusting, settling and defending claims and issuing payment for benefits.

10. Gallagher managed Val's workers' compensation claim.

11. Gallagher and Insurer held a duty to handle Val's claim in good faith and knew they held a duty to handle her claim in good faith.

2

12.     On September 6, 2019, in the course of her work-related activities with Edgewood Assisted Living, Val was cleaning a bathroom.

13.     While cleaning the shower, Val slipped on a wet rug, twisting her right knee and hitting her right knee on the shower's ledge.

14.     Val experienced immediate right knee pain and swelling.

15.     The Monday following her injury, she was examined by the nursing staff at Edgewood Assisted Living.

16.     The nurse recommended that Val report to urgent care because her knee was swollen, sore and inflamed.

17.     Val sought medical treatment and incurred medical expenses as a result of her work-related injury.

18.     Insurer and Gallagher initially accepted Val's workers' compensation claim as compensable and paid her benefits.

19.     In January of 2020, Val was seen by Dr. Joseph Humpherys who diagnosed Val with right knee pain and a "suspected medial meniscus tear and patellofemoral osteoarthritis."

20.     For over two and a half years, Insurer and Gallagher paid for the medical treatment associated with Val's work-related injury, including physical therapy, x-rays, MRIs, corticosteroid injections and Visco supplementation/Synvisc injections.

21.    Because the conservative treatment was not providing Val lasting pain relief, Dr. Humpherys recommended that Val undergo a right knee arthroscopy with partial meniscectomy.

22.    Val had to delay the surgery as she was financially unable to take time off of work; however, Val continued to receive injections, which provided her temporary pain relief.

23.    Insurer and Gallagher requested that Val undergo an independent medical examination ("IME") with Dr. Paul Cederberg ("Dr. Cederberg").

24.    On June 15, 2022, Dr. Cederberg examined Val.

25.    Dr. Cederberg is known to have a close relationship with insurance companies and routinely provides insurers with biased medical opinions.

26.    Dr. Cederberg overwhelming renders opinions in favor of insurers and their attorneys when he performs independent medical examinations.

27.    Dr. Cederberg has performed IMEs for roughly thirty years and performs 320 evaluations per year, primarily for insurance companies or their lawyers, because as he testified "that's the market for independent medical evaluations."

28.    Insurer and/or Gallagher knew, or should have known, that Dr. Cederberg regularly and routinely provides opinions to insurance companies that reduce the insurer's claim payments and that he was predictably biased in favor of the party retaining his services.

29.    On June 28, 2022, Dr. Cederberg issued his report.

30.     Dr. Cederberg's report described Val's injury as, "she was getting down to clean the shower floor when she hit her right knee on the ledge of the shower." Dr. Cederberg's report ignored the fact that Val both twisted and hit her knee which resulted in the injury.

31.     Dr. Cederberg's report went on to claim that because the "diagnostic testing, including x-rays and MRIs, around that time of the injury did not show any acute traumatic injury that would be associated with the mechanism of injury of September 6, 2019.   Therefore, [the September 6, 2019] work injury is not a major contributing cause to the current diagnosis."

32.     Dr. Cederberg went on to opine that Val's contusion of the knee "typically would last for four weeks," and the treatment after October 6, 2019, was due to Val's pre-existing degenerative process in her right knee.

33.     Dr. Cederberg concluded that Val did not require any additional medical treatment as her injury had resolved within four weeks.

34.     Dr. Cederberg reached these conclusions despite the fact that Val's treating physician concluded that Val's knee injury from the work-related incident had not resolved, and Val required additional treatment to relieve her ongoing pain, including surgery.

35.     Dr. Cederberg's report was transparently biased.

36.     Insurer and/or Gallagher knew, or should have known, that Dr. Cederberg's report did not provide a reasonable basis for denying treatment of Val's knee injury and that her entitlement to benefits was not fairly debatable.

37.   Following the denial, Val was responsible for paying for a portion of her medical treatment.

38.   On September 27, 2022, Val was seen by her treating physician, Dr. Humpherys, and he concluded that because conservative treatment had not provided Val lasting relief, surgery was necessary to relieve her pain.

39.   Dr. Humpherys performed the surgery on September 27, 2022.  During the surgery, Dr. Humpherys found "degenerative radial tear inner portion medial meniscus. Horizontal cleavage tear posterior toward the root that was near 90% complete. Grade III changes to the central and lateral facet of the patella. There is grade III in one area of grade IV chondral flaps to the medial femoral condyle measuring 10 by 12 mm."

40.   Insurer and Gallagher chose not to provide Dr. Humpherys' surgical findings to Dr. Cederberg and never asked Dr. Cederberg to provide a supplemental report based upon Dr. Humpherys' finding of a medial meniscus tear.

41.   Dr. Humpherys' opined that Val's injury was and remains a major contributing cause of Val's medical condition and need for treatment and the surgery.

42.   Following the surgery, Val was forced to take five weeks off of work, and Val received no temporary total disability benefits ("TTD") from Insurer or Gallagher during this period.

43.   Val attempted to receive treatment for her knee following the surgery; however, she was ultimately forced to stop treatment due to her mounting medical bills.

44.     On December 15, 2022, Val filed a Petition for Hearing with the Department of Labor detailing the discrepancies in Dr. Cederberg's report and asking for review of the Insurer/Employer's denial of her workers' compensation benefits.

45.     As part of the proceeding, Dr. Cederberg's deposition was taken on November 28, 2023.  During his deposition, Dr. Cederberg first disagreed with Dr. Humpherys' conclusion that Val sustained a medial meniscus tear and claimed that Dr. Humpherys could not find a tear without first looking inside Val's knee.  Dr. Cederberg agreed that looking inside Val's knee would provide the "gold standard proof" of a tear.  Upon being confronted with Dr. Humpherys' operative findings of a medial meniscus tear, Dr. Cederberg *still* would not admit that the medial meniscus tear was Val's primary pain generator.

46.     Upon being confronted with Dr. Humpherys' operative notes, including the finding of a medial meniscus tear, Dr. Cederberg issued a new opinion during his deposition, by claiming that Val's surgery showed that her knee was "basically falling into pieces on the medial aspect of the knee, including the meniscus, which is worn out, but it's the entire knee is wearing out."

47.     Dr. Cederberg went on to claim that Val had been dealing with a torn meniscus for a while and claimed that Val developed the pain from her alleged degenerative knee a month after the contusion.

48.     After being confronted with the operative findings that Val tore her meniscus, Dr. Cederberg *still* stood by his false opinion that Val merely suffered from a contusion of her knee which resolved after four weeks.

49.     After a hearing before the Department of Labor on February 15, 2024, the Department issued its decision on August 29, 2024.

50.     Contrary to the false conclusions of Dr. Cederberg, the Department concluded that Val's work injury was a major contributing cause of her condition. The Department also made it clear that Val did not have symptoms prior to the incident, and the symptoms occurred after the incident.  The Department also concluded that Val experienced pain immediately after the incident, that she required treatment following the incident and that the surgery confirmed that Val suffered a medial meniscus tear caused by the work event.

51.     The Department noted that Dr. Cederberg ignored the persistence of Val's symptoms over the months and years following the incident, and the Department stated that Dr. Cederberg "appears to be relying on the usual course of treatment and ignoring the realities of [Val's] individual situation."

52.     The Department concluded that Val's "work-related injury is a major contributing cause of her condition and need for treatment" and, as a result, determined that Val was entitled to workers' compensation TTD benefits and medical expense benefits.

53.     Due to the Insurer's and Gallagher's wrongful denial of Val's workers' compensation benefits, the medical treatment related to her knee was delayed and obstructed, causing additional physical pain, along with associated emotional distress, aggravation, annoyance and embarrassment.

54.    The denial of benefits caused Val to endure serious financial hardship and emotional distress, including unpaid TTD benefits and medical bills being sent to collections.

55.    Insurer and Gallagher failed to conduct a reasonable investigation of the facts and the law applicable to the claim, disregarded facts and law that supported Val's claim, relied upon the opinion of a known biased doctor and actively sought excuses in order to wrongfully deny Val's workers' compensation benefits.

## COUNT ONE
### (Bad Faith)

56.    Val hereby realleges all previous paragraphs and incorporates them as though fully set forth herein.

57.    Insurer and Gallagher hold a duty to deal in good faith, they must fairly process workers' compensation claims, and they must have a reasonable basis if they are going to deny workers' compensation benefits.

58.    Insurer and Gallagher breached their duties of good faith on numerous occasions including, but not limited to:

    (a)    Denying benefits to Val without a reasonable basis;

    (b)    Hiring a doctor to conduct an IME knowing or having the ability to know that the doctor was biased in favor of insurance companies;

    (c)    Relying upon statements within Dr. Cederberg's report that were contrary to the medical information that was in the Insurer's and Gallagher's possession;

    (d)    Relying upon statements within Dr. Cederberg's report that were clearly contrary to the opinion of Val's treating physician and medical history;

    (e)    Relying upon a transparently biased report from Dr. Cederberg to deny benefits; and

(f)    Denying workers' compensation benefits to Val when her claim was not fairly debatable, and Insurer/Gallagher knew or should have known that her claim was not fairly debatable.

59.    Upon information and belief, Insurer's and Gallagher's conduct is part of a pattern of conduct of using biased IME doctors, like Dr. Cederberg, to provide biased reports as a basis to deny legitimate claims and reduce claim costs.

60.    Insurer and Gallagher have shown a reckless disregard of Val's interests and acted with fraud, malice or oppression, making punitive damages appropriate.

61.    As a proximate result of Insurer's and Gallagher's misconduct, Val has been harmed including, but not limited to, the following: delay in payment of her medical expenses and TTD benefits; delay and obstruction of her medical care; increased physical pain; financial hardship; pecuniary loss, along with associated emotional distress, aggravation, annoyance, and embarrassment; and attorney's fees and expenses.

WHEREFORE, Plaintiff Valerie Morris seeks the following relief:

(1)    Compensatory damages, including attorney's fees in obtaining her workers' compensation benefits, in an amount to be determined at trial;

(2)    Punitive damages in an amount to be determined at trial;

(3)    Attorneys' fees as allowed under SDCL 58-12-3;

(4)    Pre-judgment interest as allowed by law; and

(5)    Other relief as deemed appropriate and necessary by either the Court or the jury.

10

Dated this 25th day of October, 2024.

**JOHNSON, JANKLOW & ABDALLAH, L.L.P.**

BY _____

Scott A. Abdallah (scott@janklowabdallah.com)
Erin Schoenbeck Byre (erin@janklowabdallah.com)
101 South Main Avenue, Suite 100
Sioux Falls, SD 57104
(605) 338-4304

**SIMPSON LAW FIRM, PROF. L.L.C.**

Michael J. Simpson  (mike@simpsonsdlaw.com)
1600 Mountain View Road, Suite 110
Rapid City, SD 57702
(605) 716-1000

*Attorneys for the Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all issues so triable.

_____

Scott A. Abdallah
Michael J. Simpson
Erin Schoenbeck Byre

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Valerie Morris

## DEFENDANTS

Pennsylvania Manuacturers' Association Insurance Company, et al.

**(b)** County of Residence of First Listed Plaintiff    Pennington (SD)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery (PA)
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Scott Abdallah & Erin Schoenbeck Byre, Johnson Law Firm, 101 South Main Avenue, Suite 100, Sioux Falls, SD 57104 (605-338-4304)

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 2  U.S. Government Defendant
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                             *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane   ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product   Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | Liability   ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &   Pharmaceutical | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| & Enforcement of Judgment | Slander   Personal Injury | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'   Product Liability | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted | Liability   ❏ 368 Asbestos Personal | | New Drug Application | ❏ 470 Racketeer Influenced and |
| Student Loans | ❏ 340 Marine   Injury Product | | ❏ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ❏ 345 Marine Product   Liability | | | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| of Veteran's Benefits | ❏ 350 Motor Vehicle   ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle   ❏ 371 Truth in Lending | Act | ❏ 862 Black Lung (923) | Exchange |
| ❏ 190 Other Contract | Product Liability   ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal   Property Damage | Relations | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | Injury   ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| | ❏ 362 Personal Injury -   Product Liability | ❏ 751 Family and Medical | | ❏ 895 Freedom of Information |
| | Medical Malpractice | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights   **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 899 Administrative Procedure |
| ❏ 220 Foreclosure | ❏ 441 Voting   ❏ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment   ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/   Sentence | | 26 USC 7609 | ❏ 950 Constitutionality of |
| ❏ 245 Tort Product Liability | Accommodations   ❏ 530 General | | | State Statutes |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -   ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment   **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities -   ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other   ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education   ❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 / 28 U.S.C. § 1391(b)(2)

Brief description of cause:
Bad Faith

## VII. REQUESTED IN COMPLAINT:

- ❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    10/25/2024

SIGNATURE OF ATTORNEY OF RECORD    */s/  Scott A. Abdallah*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse  (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.