UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| VALERIE MORRIS,<br><br>           Plaintiff,<br><br><br>   vs.<br><br><br>PENNSYLVANIA MANUFACTURERS'<br>ASSOCIATION INSURANCE COMPANY,<br>AND GALLAGHER BASSETT<br>SERVICES, INC.,<br><br>         Defendants. | 4:24-CV-04196-CCT<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL<br><br>Docket No. 13 |

**INTRODUCTION**

Plaintiff Valerie Morris filed this action against defendants alleging that they denied her worker's compensation claim in bad faith. <u>See</u> Docket No. 1. Jurisdiction is premised on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000. <u>Id.</u> at 1; 28 U.S.C. § 1332. Plaintiff has filed a motion to compel defendants to disgorge certain discovery. Docket No. 13. Defendants oppose the motion. Docket No. 17. The presiding district court, the Honorable Camela C. Theeler, referred plaintiff's motion to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and DSD LR Civ. 72.1. <u>See</u> Docket No. 16.

## FACTS

The following facts are taken from plaintiff's complaint simply to give context to the pending motion. No opinion of verisimilitude of the allegations in the complaint is intended by this recitation.

Plaintiff was employed by Edgewood Assisted Living, which procures worker's compensation insurance through defendant Pennsylvania Manufacturers' Association Insurance Company ("insurer"). Insurer in turn has contracted the administration of workers compensation claims to defendant Gallagher Bassett Services, Inc. ("Gallagher"). Plaintiff alleges both insurer and Gallagher had a duty to handle workers compensation claims in good faith.

On September 6, 2019, plaintiff slipped at work and twisted her right knee, hitting the knee on a shower ledge. She filed a worker's compensation claim through her employer and insurer and Gallagher accepted plaintiff's claim and paid for medical expenses and benefits pursuant to the claim for over two and a half years.

Plaintiff's physician treated her conservatively at first but, when plaintiff did not improve, recommended surgery. At this point, insurer and Gallagher requested plaintiff to undergo an independent medical examination ("IME") with Dr. Cederberg, through the company known as ExamWorks. Dr. Cederberg opined that plaintiff's work injury should have been completely healed four weeks after the injury and that plaintiff's remaining pain and

symptoms were due to pre-existing degenerative conditions in her knee. Insurer and Gallagher thereafter denied plaintiff's claim.

Plaintiff alleges Dr. Cederberg's opinion did not provide a reasonable basis for the denial of her workers compensation claim. Plaintiff alleges defendants knew or should have known that Dr. Cederberg was biased, gave only opinions on IMEs to insurance companies and their lawyers, and that his IMEs resulted in an overwhelming number of opinions favorable to the clients who hired him.

Plaintiff eventually filed a petition with the South Dakota Department of Labor seeking a determination of the compensability of her injury and the necessity of the surgery. The DOL ruled in plaintiff's favor and, a few months later, plaintiff filed this lawsuit alleging defendant acted in bad faith in denying her claim.

Pertinent to the pending motion, plaintiff served defendants with interrogatories and requests for the production of documents on January 7, 2025. Docket No. 15 at 1. Defendants served plaintiff with responses to this discovery on February 6, 2025. See Docket Nos. 15-1 & 15-2. Plaintiff served a second set of discovery responses on February 28, 2025, and, at the same time, notified defendants by letter of alleged deficiencies with defendants' responses to the first set of discovery requests. Docket No. 15-3.

The parties met and conferred several times and defendants produced some supplemental discovery. In the end, there were 10 discovery requests

upon which the parties could not agree and which are the subject of plaintiff's motion.

## DISCUSSION

### A.    Meet and Confer Requirement

Before a party may file a discovery motion seeking to compel (or seeking protection from) discovery, the party is required to meet and confer with the party from whom the discovery is requested in a good faith effort to resolve the discovery dispute.  Fed. R. Civ. P. 26(c)(1) and 37(a)(1); DSD LR 37.1.  In this motion to compel, defendants do not dispute that plaintiff met the requirement for good faith conferral.  See Docket No. 17.

### B.    Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

See Fed. R. Civ. P. 26(b)(1).

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  Interrogatories must be answered unless the opposing party objects stating specific grounds for the objection.  Cf.

id. at (b)(4).  Interrogatories must be proportional to the needs of the case, as must all discovery requests under Rule 26(b)(1).  FED. R. CIV. P. 33 advisory committee's note to 2015 Amendment.

A party requesting the production of documents "must describe with reasonable particularity each item or category of items to be inspected."  FED. R. CIV. P. 34(b)(1)(A).  The responding party must allow inspection, produce copies, or object and provide a basis for that objection.  Id. at (b)(2)(B)-(C).  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Id. at (b)(2)(E)(i).  "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."  Id. at (b)(2)(B).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out

5

incompetent, unreliable, or prejudicial evidence at trial. These considerations

are not inherent barriers to discovery, however.

**C.    Resolution of Individual Discovery Requests**

    **1.    Interrogatory No. 5 and Request for Production of Documents No. 12**

    Plaintiff served the following discovery requests on defendants:

Interrogatory No. 5:

> For the last five (5) years within the states that make up the Eighth Circuit, identify every claim in which you or any entity/third party/agent of yours hired Dr. Paul Cederberg to conduct a medical examination or records review of your insured/claimant. For purposes of this interrogatory, you may redact the name and identifying information related to the person examined. With respect to each review/examination, state:
>
>     (a)    The date of the claim;
>     (b)    The date on which Dr. Cederberg performed the medical examination or review:
>     (c)    Identify Dr. Cederberg's report;
>     (d)    Describe, in detail and not summary fashion, Dr. Cederberg's opinion following the medical exam or record review;
>     (e)    Identify whether the claim was denied or paid; and
>     (f)    Identify if the insured/claimant disputed the clai, and if so, the result of the dispute.

<u>See</u> Docket No. 15-1 at 4.

Request for the Production of Documents (RFP) No. 12:

> Produce all of Dr. Cederberg's [IMEs] and Record Review reports that you or any affiliated entity had Dr. Cederberg perform on your insured/claimants from the last five (5) years for the states that encompass the Eighth Circuit. For purposes of this [RFP], you may redact the name(s) and identifying information related to the person examined.

<u>Id.</u> at 17.

6

### a.    Stay

Defendants assert this court should stay its hand and not rule on plaintiff's motion.  They note that ExamWorks has made a motion to intervene in another case pending in this district before another judge and that judge has ordered in that case that no IMEs should be disclosed by defendants until a hearing is held on August 13, 2025.  Docket No. 17 at 11 (discussing developments in Schoon v. Farmington Cas. Co. and Gallagher Bassett Services, Inc., No. 5-24-CV-5002 (D.S.D.)).

This court is not persuaded by defendants' invitation to delay. This court previously entered an order on this exact same issue in Richter v. XL Ins. Am. Inc., No. 4:23-CV-04094-CCT, 2024 WL 3461643 at *6 (D.S.D. July 18, 2024).  The order in Richter was prompted by a motion to quash a subpoena filed by ExamWorks.  Richter, Docket No. 43.  In the Richter case, ExamWorks appeared, was represented by counsel, and had a full opportunity to be heard before the court decided. When the court issued its decision, it partially granted and partially denied ExamWorks' motion to quash.  Id. at Docket No. 59.  The fact that ExamWorks is taking another bite at the apple with another judge does not constitute persuasive reason to delay ruling on plaintiff's motion in this case.

### b.    Undue Burden or Expense

Defendants assert that it will be unduly burdensome and costly for them to locate all of Dr. Cederberg's IMEs and records reviews conducted

for defendants because their records are not searchable for IMEs performed by a particular doctor.  Docket No. 17 at 10-12.  Gallagher states it has opened 157,637 workers compensation files in the Eighth Circuit in the last five years.  <u>See</u> Docket No. 17-1 at 3.  Gallagher maintains because their data system does not permit a search by the name of the IME doctor, it would have to examine all claims files manually.  <u>Id.</u>

Defendant insurer makes a similar showing, asserting it has opened 9,237 workers comp files in the Eighth Circuit in the last five years and that those files are not electronically searchable for the names of the IME doctor.  Docket No. 17-2 at 2.  Insurer claims it would have to manually search all claims files to find the ones in which Dr. Cederberg gave an IME.  <u>Id.</u> at 2-4.

Plaintiff explained a work-around arrived at in another case whereby defendants provided ExamWorks (Dr. Cederberg's employer) with a list of claim numbers and ExamWorks then located the IMEs. Docket No. 14 at 11 (discussing <u>Richter v. XL Ins. Am. Inc.</u>, No. 4:23-CV-04094-CCT, 2024 WL 3461643 at *6 (D.S.D. July 18, 2024)).

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control."  <u>See</u> FED. R. CIV. P. 34(a)(1).  The concept of documents in a party's

8

"possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994).  "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."  American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Here, it is undisputed that the IMEs requested are in defendants' possession, they just claim that they are unable to find them without undue effort and expense.  In Richter, this court addressed that issue by noting that defendants can request from ExamWorks a list or a data report of the files in which Dr. Cederberg issued an IME for defendants.  Richter, 2024 WL 3461643 at *5-6.  ExamWorks can readily identify those cases in which Dr. Cederberg issued an IME or records review for defendants because ExamWorks would have had to have issued a 1099 at the end of the year to Dr. Cederberg.  Id.

From that list supplied by ExamWorks, defendants will then be armed with identifying data from which they can identify precisely which of its many workers comp claims files involved a medical opinion from Dr. Cederberg without manually examining all the files. Because this list or data set from ExamWorks is available to defendants upon request, the list is within defendants' possession, custody, or control and is subject to discovery under Rule 34. The court rejects defendants' claim of undue burden.

### c.    Relevance

Defendants also argue that previous IMEs from Dr. Cederberg in other cases is simply not relevant to whether defendants acted with bad faith in denying Valerie Morris' claim in this case. Defendants speculate that the other matters could involve different injuries and different opinions from Dr. Cederberg and, therefore, shed no light on whether defendants acted with bad faith in plaintiff's case.

To prove a bad faith cause of action, plaintiff must show that defendants had no reasonable basis for denying her claim for insurance benefits and that defendants acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits. See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.

As set forth in the facts section of this opinion, plaintiff's theory of the case is central to Dr. Cederberg. Plaintiff alleges that defendants hired Dr. Cederberg, knowing he had a "close" relationship with insurance companies and that he could be expected to issue an IME opinion that was

10

favorable to defendants.  Thus, plaintiff implies that IME opinions from Dr. Cederberg were not opinions that supplied defendants with a reasonable basis to deny plaintiff's claim for workers compensation benefits—a fact defendants knew or acted with reckless disregard to.

Defendants point to an opinion from this district where they claim evidence of opinions an IME doctor gave in other cases was held to be inadmissible at trial.  Docket No. 17 at 18 (citing Thompson v. Nat'l. Union Fire Ins. Co. of Pittsburgh, Civ. No. 18-4011, 2021 WL 1966693 (D.S.D. May 17, 2021)).  This is a slight mischaracterization of the holding in Thompson.

In Thompson, the IME doctor had never previously been hired by the defendant insurance company prior to his being hired in plaintiff's case. Thompson, 2021 WL 1966693 at *11.  The court held that plaintiff could still pursue her theory that the insurance company acted recklessly in relying on the IME doctor's opinion to deny benefits (because the insurance company should have known the doctor was biased), but the court held that the plaintiff's expert witness would not be allowed to testify to allegedly biased opinions the IME doctor gave to insurance companies other than the defendant.  Id. at *11, 17.  Thus, the evidence of other IMEs the doctor had given *did not* involve the defendant in Thompson.  Id.

Here, the evidence plaintiff is seeking concerns only those IME opinions given by Dr. Cederberg *to defendants*.  That distinguishes the evidence discussed in the Thompson case.  Also, as explained above, the standard for admissibility of evidence at trial is not the standard for relevance at the

11

discovery stage of a case. The latter is broader than the former. Thus, the holding in <u>Thompson</u> that plaintiff's expert witness would not be allowed to testify *at trial* about IMEs the defendant's doctor had given to other insureds does not establish the principle that plaintiff was not entitled to *discovery* concerning those other IMEs. The court holds that plaintiff has satisfied her initial threshold burden to demonstrate that the subpoenaed documents are relevant. Defendants' argument that the evidence is not relevant is not convincing.

### d.    Tailoring the Court's Order

The court has the power to *sua sponte* limit discovery where necessary. Fed. R. Civ. P. 26(b)(1) and (b)(2)(C). The court is ordering defendants to fully produce the IMEs and records reviews done by Dr. Cederberg for them in connection with RFP 12. Because the court is ordering defendants to produce these documents, the court will order that defendants need not answer part (d) of Interrogatory No. 5 which requests defendants to provide a detailed, not summary, description of what Dr. Cederberg's opinion is in each IME. Plaintiff will have the documents themselves; it is redundant to require defendants to also describe the contents of the documents.

### 2.    Interrogatory Nos. 22 & 23

Interrogatory No. 22 states the following:

> Identify each document you provided Dr. Cederberg as part of the review he performed on Plaintiff's claim and the IME he performed on Plaintiff, including the individual that selected the document(s), the person's title, as well as, why each document was selected.

Docket No. 15-1 at 12.

Interrogatory No. 23 states:

Identify any documents that were in your possession that you *did not* provide to Dr. Cederberg as part of the review he performed on Plaintiff's claim and the IME he performed on Plaintiff, including the individual that selected the document(s) to withhold, the person's title, as well as, why each document was selected.

Id. (emphasis in original).

Defendants' responses to these interrogatories are that defendants did not give Dr. Cederberg any documents to review. Instead, his employer ExamWorks provided Dr. Cederberg with the necessary review documents. Id.

Plaintiff's interrogatory assumes defendants had direct contact with Dr. Cederberg, which apparently they did not. Plaintiff argues this information is in ExamWorks' possession and defendants may obtain it upon request. Hence, plaintiff argues the information is within defendants' possession, custody or control and they should be made to produce the information.

Not exactly. The interrogatories request not just identification of documents that were given to Dr. Cederberg, but also the reasons certain documents were given while others were withheld, the name and title of the person who decided what documents to provide, and why. ExamWorks cannot answer any of these questions.

Still, ExamWorks did not come by the documents it gave to Dr. Cederberg magically. Someone or several persons in the employ of defendants had to first give the documents to ExamWorks. Defendants

13

can answer the interrogatories if the interrogatories are reformulated to ask what documents defendants gave to ExamWorks and why instead of asking what documents they gave to the doctor.

But it is not the court's duty to reform discovery requests that are not on point. The court will deny plaintiff's request to compel defendants to obtain answers to these interrogatories as written. Plaintiff may serve defendants with follow-up requests that take into account the reality of the transfer of information to Dr. Cederberg. However, the court notes that defendants, as well as the court, have a duty to "secur[e] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. The court urges defendants to "look through" the interrogatories and provide answers as to who transmitted documents *to ExamWorks*, the title of such persons, and how they decided which documents to transmit to ExamWorks.

Defendants filed a surreply on this motion in which they indicate that they have now provided plaintiff with copies of all the records ExamWorks provided to Dr. Cederberg. Docket No. 31 at 3. However, this production of documents does not render moot interrogatory nos. 22 & 23. Production of the documents themselves does not tell plaintiff *who* produced the documents to ExamWorks, which then gave them to Dr. Cederberg, nor does it tell plaintiff the decision-making process concerning which documents to produce and which not to produce. Defendants also note that plaintiff's surgical records were created after

14

Dr. Cederberg rendered his initial opinion. This fact also does not make the interrogatories moot. Defendant can sign an interrogatory under oath stating that the surgical records were not given to Dr. Cederberg (via ExamWorks) because such records did not exist when Dr. Cederberg was hired.

Again, interrogatory nos. 22 & 23 are imperfectly worded given that defendants apparently gave the documents to be reviewed to ExamWorks rather than to Dr. Cederberg directly. In the name of civility and expedience, the court urges defendants to answer the interrogatories without further court intervention by stating which employee of defendant gave the documents to ExamWorks and how decisions were made about what to transmit.

### 3.    Interrogatory No. 27 and RFP 25

These two discovery requests are similar to Interrogatory No. 5 and RFP 12, except instead of requesting the IMEs and records reviews produced by Dr. Cederberg, plaintiff seeks *all* IMEs and records reviews produced by any doctor employed by ExamWorks for a five-year period within the Eighth Circuit. See Docket No. 15-8 at 2, 5.

Defendants object on the basis of undue burden, overbreadth and relevancy. The court agrees with defendants. There is no record of how many physicians provide services through ExamWorks, but a cursory examination of ExamWorks' web site indicates there are a great many such physicians. See https://www.examworks.com/physicians/, last

15

checked August 4, 2025.  Plaintiff makes no showing that ExamWorks itself is biased or that each of the physicians who provide IMEs through ExamWorks is biased.  The court declines to order defendants to comply with these discovery requests.

### 4.    Interrogatory No. 28 & RFP 24

These two discovery requests are similar to Interrogatory Nos. 5 & 27 and RFP 12 & 25, except instead of requesting the IMEs and records reviews produced by Dr. Cederberg, plaintiff seeks *all* IMEs and records reviews produced by a list of four named doctors presumably employed by ExamWorks for a five-year period within the Eighth Circuit.  See Docket No. 15-8 at 3, 4.

Defendants object on the basis of undue burden, overbreadth and relevancy.  The court agrees with defendants.  There is no record of these four named physicians providing IMEs or records reviews in connection with plaintiff's case.  Plaintiff makes no showing that work product from these four doctors will shed any light at all on whether Dr. Cederberg's IME in her case was worthy of credence.  The most plaintiff shows is that defendants "considered" hiring these doctors in plaintiff's case before actually hiring Dr. Cederberg.

Plaintiff relies for support of her requests on a brief three-page document from Hofer v. United Fian. Cas. Co., Civ. 15-4181, Docket No. 26 (DSD Jul. 26, 2016).  But that document is merely a skeletal record of what was fully discussed and decided at an oral hearing on plaintiff's

motion to compel.  Id.  This court cannot discern whether there were

factors in that case that dictated a different result than in plaintiff's case.

The document contains no discussion of facts, law or analysis—it merely

memorializes the court's previous oral decision.  Without more, this court

does not find the document cited by plaintiff to provide grounds for

ordering the far-reaching discovery sought here with such little showing

of relevance.  The court declines to order defendants to comply with

these discovery requests.

### 5.    RFP No. 8

Plaintiff's RFP No. 8 states as follows:

> Produce a copy of any and all communications between you and
> any expert or any healthcare professional, occurring prior to the
> commencement of this litigation, relating to Plaintiff's claim for
> workers' compensation benefits, including and [sic] any of
> Plaintiff's physicians.

See Docket No. 15-1 at 16.

Defendants produced communications between themselves and

Dr. Cederberg and between themselves and plaintiff's physicians.  Id.

However, defendants objected to providing communications with its

retained experts.  Id.  Defendants articulated that plaintiff's request went

beyond the scope of expert discovery under Fed. R. Civ. P. 26(a)(2)(D).  In

addition, defendants stated that they had not yet made a decision

regarding the calling of expert witnesses at trial.  Id.

Defendants wrote the above response to RFP No. 8 on February 6,

2025.  Id. at 24.  The district court's scheduling order required plaintiff

to designate her experts by April 30, 2025, and defendants to do so on June 27, 2025.  <u>See</u> Docket No. 11 at 2.  Plaintiff filed her reply brief July 18 and does not mention any expert reports that she wants compelled except as discussed immediately below.  Therefore, the court assumes defendants complied with the district court's order and disclosed what they were supposed to in connection with their experts by the June 27, 2025, deadline.

In her reply brief, plaintiff explains that she not only wants communications between defendants and Dr. Cederberg; she also wants defendants to produce communications between ExamWorks and Dr. Cederberg.  It is not clear to this court that, if requested by defendants, ExamWorks would have an obligation to provide its communications with Dr. Cederberg.  Therefore, plaintiff has not shown that communications between ExamWorks and Dr. Cederberg are within defendants' possession, custody, and control.  Plaintiff suggests defendants could subpoena such communications from ExamWorks, but that could equally be said of plaintiff:  she could subpoena the documents herself.

Furthermore, the plain language of RFP No. 8 does not include communications between ExamWorks and Dr. Cederberg.  RFP No. 8 asks for communications between *defendant* and any expert or healthcare professional.  This would cover communications between defendants and ExamWorks, but not communications between

18

ExamWorks and Dr. Cederberg.  The court denies plaintiff's motion to compel any further response to RFP No. 8.

### 6.    RFP No. 27

RFP No. 27 states the following:

> Produce your contract with ExamWorks regarding the services it performed on Plaintiff's claim and any documents you used to evaluate ExamWorks' performance, and any documents involving your selection or vetting of ExamWorks.

See Docket No. 15-8 at 7.

Plaintiff claims the documents requested here are central to her claim that defendants hired ExamWorks and Dr. Cederberg because they knew a favorable IME would be produced by them without regard to the medical facts in plaintiff's case.  The court agrees that plaintiff has shown the documents requested in RFP No. 27 are relevant.

Defendants claim the ExamWorks contract has a confidentiality clause which prohibits disclosure of the contract.  Docket No. 17 at 28.  Furthermore, defendants claim ExamWorks has refused to consent to the voluntary production of the contract.  Id.

But usually both parties to a contract retain a copy of the contract, so while ExamWorks may refuse to produce its copy, the court believes Gallagher would also have a copy.  To the extent Gallagher is reticent to disclose the contract due to fear of breaching the confidentiality term of the contract, the court will order Gallagher to produce the ExamWorks contract to plaintiff.

Finally, Gallagher claims the ExamWorks contract is proprietary and, therefore, confidential or protected trade secrets. The court nonetheless orders Gallagher to produce the documents requested in RFP No. 8. The parties have already entered into a confidentiality agreement and stipulation. See Docket No. 21-2. If that agreement is not sufficient to cover the confidentiality concerns regarding Gallagher's contract with ExamWorks, the parties may enter into a supplemental, mutually-agreeable protective order hammered out between the parties and submitted to the court for signature upon stipulation by all. Should the parties be unable to reach agreement on a protective order for the ExamWorks contract, the parties shall notify the court and the court will impose its own protective order. However, it appears to the court that the existing protective agreement is broad enough to cover the ExamWorks contract. Id.

### 7.    Attorney-Client Privilege in the Claims File

Defendants made numerous redactions when they produced plaintiff's claim file in discovery, asserting these redactions were protected by the attorney-client privilege. Defendants provided a Vaughn[1] index to accompany the redactions.

Plaintiff does not take issue with any redactions after the filing of the lawsuit in this case in October 2024, nor with the sufficiency of the index. However, plaintiff does take issue with redactions prior to October

---

[1] So named after Vaughn v. Rosen, 383 F. Supp. 1049 (D.D.C. 1974).

2024.  By claiming attorney-client privilege for those items prior to the filing of this lawsuit, plaintiff alleges defendants have asserted the defense of reliance on counsel's advise and, accordingly, have waived the privilege.

The court notes that neither defendant raised an affirmative defense of reliance on advice of counsel in their answers.  See Docket Nos. 5 & 7.  But South Dakota law does not require an explicit assertion of an advice-of-counsel defense.  Hurley v. State Farm Mut. Auto. Ins. Co., 4:10-CV-04165-KES, 2013 WL 365234 at *2 (D.S.D. Jan. 30, 2013) (citing Bertelsen v. Allstate Ins. Co., 796 N.W.2s 685, 703 (S.D. 2011)). The privilege can also be waived impliedly when the client does some affirmative act indicating reliance on counsel's advice that puts the protected information at issue by making it relevant to the case.  Id. at *2-3 (citing Bertelsen, 796 N.W.2d at 702).  Plaintiff relies on Hurley in asserting that defendants have impliedly waived attorney client privilege in this case.  The court disagrees.

In Hurley, the defendant insurance company had paid the plaintiff nothing on his claim prior to the start of bad faith/contract litigation.  Id. at *1.  After the plaintiff filed his complaint in federal court alleging breach of contract and bad faith, defendant paid the plaintiff $540,000. Id.  Plaintiff proffered the depositions of four of defendant's employees in which the employees testified they relied heavily on counsel's advice in deciding to pay the post-complaint money to the plaintiff.  Id. at *3.  The

21

district court held that by so testifying, defendant had "injected its attorney's advice into this case by relying, quite heavily, on the advice of counsel in deciding to increase the amount paid on Hurley's claim." <u>Id.</u>

Here, plaintiff points to no such evidence. Defendants have not affirmatively asserted the defense of advice-of-counsel. Plaintiff recites no testimony of any employee of defendants indicating they relied on advice of counsel in either denying or paying plaintiff's claim. Thus, there is no evidence defendants have taken an affirmative act to impliedly inject their attorney's advice into this litigation and made it relevant. At this point, then, there is no implied waiver of the attorney-client privilege.

If such testimony comes to light at a later time, plaintiff can renew her request that the pre-lawsuit redactions be removed from the discovery. For now, based on the record before the court, the court concludes that defendants have not explicitly or impliedly waived their attorney-client privilege. The court denies plaintiff's motion to compel defendants to provide unredacted portions of the claims file predating the filing of this lawsuit.

**D.    Attorney's Fees**

Plaintiff seeks an award of attorney's fees for the time and expense of making the present motion to compel. Rule 37 allows an award of attorney's fees as sanctions for having to make a motion to compel, but cautions that such sanctions should not be awarded when the opposing

party's nondisclosure was substantially justified.  See Fed. R. Civ. P. 37(a)(5)(A)(ii).  Here, plaintiff moved to compel on 10 discrete discovery requests and on the subject of a purported waiver of attorney-client privilege.  Out of those 11 topics, the plaintiff prevailed only three items. The court finds under these circumstances that defendants' nondisclosure/objections were substantially justified and, therefore, that attorney's fees should not be awarded.  The court denies plaintiff's request for attorney's fees as sanctions for the making of this motion.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this court hereby grants in part and denies in part plaintiff's motion to compel [Docket No. 13] as follows:

--motion **granted** as to **interrogatory no. 5** and **RFP no. 12** as modified;

--motion **granted** as to **RFP no. 27**;

--motion **denied** as to **interrogatory nos. 22 & 23**, but defendant encouraged to provide information as to documents defendants transmitted to ExamWorks;

--motion **denied** as to **interrogatory nos. 27 & 28** and **RFP nos. 8, 24, & 25**; and

--motion **denied** as to asserted **waiver of attorney-client privilege** regarding redactions made to the claims file prior to October 2024.

It is further

ORDERED that as to interrogatory no. 5 and RFP 12 & 27, defendants shall produce the discovery sought in these discovery requests to plaintiff within 15 days of the date of this order.  Should either party file objections to

23

this opinion in accordance with the below NOTICE, the requirements of this order are stayed until such time as the district court resolves those objections.

It is further

ORDERED that an officer, agent, or employee of defendants shall sign all prior interrogatory responses and all future interrogatory responses in accordance with Fed. R. Civ. P. 33(b)(5). Such signatures are required.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v. Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023). Objections must be specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 6th day of August, 2025.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge